ACCEPTED
01-14-00204-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 7:02:25 PM
CHRISTOPHER PRINE
CLERK

**CAUSE NO. 01-14-00204-CV**

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 7:02:25 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE HOUSTON [FIRST] COURT OF APPEALS**

_____

**On Appeal from the 269th Judicial District Court Harris County
Cause No. 2011-16459**

_____

**PHONG TRINH, APPELLANT**

**V.**

**FATHA ELMI AND MED SOLUTIONS PHARMACY, INC., APPELLEES**

_____

**APPELLANT'S MOTION FOR RECONSIDERATION**

_____

Paul Simon
State Bar No. 24003276
psimon@shmsfirm.com
Rachel Berkley
State Bar No. 24082684
rberkley@shmsfirm.com
SIMON HERBERT & MCCLELLAND, LLP
3411 Richmond Avenue, Suite 400
Houston, Texas 77046
(713) 987-7100 (Main)
(713) 987-7120 (Fax)

**TABLE OF CONTENTS**

I.  PROCEDURAL AND FACTAUL BACKGROUND ................................... 1

II.  SUMMARY OF THE ARGUMENT ................................................. 1

III.  ARGUMENT & AUTHORITIES ................................................... 3

    A.  The Court May Not Look Outside the Record to Harmonize a
        Verdict. ........................................................................................... 3

    B.  The Memorandum Opinion Did Not Address Those Cases
        Holding that a Jury May Not Award No Damages When Expert
        Testimony on Damages is Uncontroverted. ........................................ 7

IV.  CONCLUSION & PRAYER .......................................................... 14

CERTIFICATE OF SERVICE ................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*American Recreational Markets General Agency, Inc. v. Hawkins,*
846 S.W.2d 476 (Tex. App.—Houston [14th Dist.] 1993, no writ)......................13

*Callejo v. Brazos Elec. Power Coop.*, 755 S.W.2d 73 (Tex. 1988) ..........................8

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)..........................................7, 9

*Cooper v. Lyon Financial Services, Inc.*, 65 S.W.3d 197
(Tex. App.—Houston [14th Dist.] 2001, no pet.) ...................................................12

*Davis v. Davison*, 905 S.W.2d 789
(Tex. App.—Beaumont 1995, no writ) ...................................................................8

*First State Bank v. Keilman*, 851 S.W.2d 914
(Tex. App.—Austin 1993, writ denied) ...................................................................8

*Flowers v. Flowers*, 407 S.W.3d 452
(Tex. App.—Houston [14th Dist.] 2013, no pet.) ...................................................5

*Guillory v. Boykins*, 442 S.W.3d 682
(Tex. App.—Houston [1st Dist.] 2014, no pet.).......................................................5

*HCAD v. Sigmore Corp.*, 2008 WL 921073
(Tex. App.—Houston [1st Dist.] 2008, no pet.).......................................................8

*HCAD v. Riverway Holdings, L.P.*, 2011 WL 529466
(Tex. App.—Houston [14th Dist.] 2011, pet. denied)..............................................9

*Hill v. Clayton*, 827 S.W.2d 570
(Tex. App.—Corpus Christi 1992, no writ) .........................................................8, 9

*Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691
(Tex. App.—Houston [14th Dist.] 2013, no pet.) ...............................................3, 4

*Hunter v. Ford Motor Co.*, 305 S.W.3d 202
(Tex. App.—Waco 2009, no pet.) ...........................................................................9

*Little Rock Furniture Mfg. Co. v. Dunn*,
148 Tex. 197, 222 S.W.2d 985 (1949) ....................................................................4

*McGee v. Thomas*, 508 S.W.2d 191
(Tex. Civ. App.—Amarillo 1974, writ ref'd n.r.e.)...............................................8

*Moore v. Moore*, 383 S.W.3d 190
(Tex. App.—Dallas 2012, pet. denied) ...................................................................8

*Morton v. Johnston*, 1998 WL 713679
(Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.)......................................9

*Mustang Pipeline Co. v. Driver Pipeline Co.*,
134 S.W.3d 195 (Tex. 2004) .............................................................................2, 6

*National Plan Admins., Inc. v. Nat'l Health Ins. Co.*,
150 S.W.3d 718 (Tex. App.—Austin 2004).........................................................8

*National Plan Admins., Inc. v. Nat'l Health Ins. Co.*,
235 S.W.3d 695 (Tex. 2007). .............................................................................8

*Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995).........................................9

*Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726
(Tex. App.—Amarillo 2001, no pet.)...................................................................3

*Russell v. Hankerson*, 771 S.W.2d 650
(Tex. App.—Corpus Christi 1989, writ denied)...................................................8

*Wang v. Gonzalez*, 2013 WL 174576
(Tex. App.—Houston [1st Dist.] 2013, no pet.)...................................................9

**Other**

Texas Pattern Jury Charges, Business Consumer Insurance Employment,
comment to PJC 101.2 (2012) ..............................................................................6

Texas Pattern Jury Charges, Business Consumer Insurance Employment,
PJC 101.6 (2012) .................................................................................................7

TO THE HONORABLE JUSTICES:

Appellant, Phong Trinh ("Trinh"), files this Motion for Reconsideration (the "Motion") and, in support thereof, shows the following:

Trinh files this Motion to raise issues that either were not addressed or were incorrectly decided by the Memorandum Opinion, including that it failed to follow, or otherwise distinguish, precedent holding juries may not disregard uncontroverted testimony by a qualified expert establishing damages or attorney's fees.

## I.     PROCEDURAL AND FACTAUL BACKGROUND

On May 28, 2015, a panel of this Court issued an opinion affirming in part, and reversing and remanding in part, the trial court's judgment. This Motion asks the Court to reconsider its holding that the jury did not have to award Trinh undisputed damages and attorney's fees on his breach of contract claim.

## II.     SUMMARY OF THE ARGUMENT

This lawsuit involved whether Trinh formed an agreement with Fatha Elmi ("Elmi") and Med Solution, Inc. (the "Pharmacy") to be a 40% owner in the Pharmacy, and whether Appellees breached that agreement. The jury found Appellees agreed "Trinh would own a 40% interest in the Pharmacy," and also that Appellees failed to comply with the agreement.[1]

---

[1]    C.R. at 666–67.

But, the trial court entered a judgment, based on the jury's verdict, awarding Trinh neither attorney's fees nor contract damages.[2] In affirming, this Court "harmonized" the jury's answers by concluding "the jury could have determined that there was an agreement and that Elmi breached the agreement but that Trinh was not entitled to damages because he did not perform his obligations under the agreement."[3] The problem with this harmonization is that Appellees never argued— much less presented the jury with evidence—that Trinh failed to perform his obligations. Indeed, when one party materially breaches a contract, the other party is excused from further performance and may sue for breach.[4]

And, in reaching its ultimate conclusion, this Court did not address the cases which hold that a jury may not disregard uncontroverted expert testimony as to damages, it reached outside of the evidence, the arguments Appellees made at trial, and the issues presented to the jury. The zero-damages finding means the Pharmacy is literally worthless, and that is against *at least* the great weight and preponderance of the evidence, because Elmi sold a portion of Trinh's interest for $15,000 shortly after Appellees' breach. Trinh therefore asks the Court to reconsider and render judgment for Trinh on his breach-of-contract damages and attorney's fees.

---

[2] C.R. at 668.

[3] Mem. Op. at 8.

[4] *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

## III. ARGUMENT & AUTHORITIES

### A. The Court May Not Look Outside the Record to Harmonize a Verdict.

In harmonizing a jury verdict, an appellate court may examine the record to ascertain the jury's intent, but it cannot speculate about what the jury intended in reaching a particular verdict or create certainty out of jury findings that are ambiguous or in conflict.[5] For example, if a verdict separately labels different amounts of damages in accordance with the question presented, the verdict may be "harmonized" by adding the separate amounts to arrive at a total damages figure.[6] But, a party cannot appeal an issue for which it has not preserved error.[7]

In *Mintzer*, a jury found a contract existed, but it found no breach and awarded no *quantum meruit* damages.[8] Appellant argued these findings meant the contract could not have required consideration (because it was undisputed no payment was made), and thus was not a contract to bar a *quantum meruit* recovery.[9] The court held

---

[5] *Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[6] *Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726, 733 (Tex. App.—Amarillo 2001, no pet.).

[7] *Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 697 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[8] *Mintzer*, 417 S.W.3d at 694.

[9] *Id*. at 696.

that, because the issue of whether the contract was supported by consideration was not argued in the trial court, it was not preserved for appellate court review.[10]

Similarly, Appellees never argued that Trinh failed to perform his obligations under their contract. Instead, they only argued no contract was formed. Indeed, in their Brief, Appellees argue only the jury could have found the contract was never consummated, not that Trinh failed to perform his obligations under it. Thus, this Court cannot "harmonize" the jury's finding of breach but no damages on the theory that "the jury could have found that a partnership was never created because Trinh did not perform his obligations under the agreement,"[11] because Appellees never raised that issue, and thus, it was not preserved for appeal. And, that kind of harmonization not only would create a fatal conflict with the verdict,[12] but also, and as importantly, the Memorandum Opinion notes that "the jury was never asked about Trinh's concomitant obligations under the agreement."[13]

---

[10]  *Id*. at 697.

[11]  Mem. Op. at 8.

[12]  *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (1949) ("To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. . . . 'The test in such [a] case is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant.'" (citations omitted).

[13]  Mem. Op. at 8.

Indeed, the jury was not asked about Trinh's concomitant obligations, *i.e.*, his payment obligations, because Appellees never argued Trinh failed to perform his end of the bargain. Appellees did not plead breach, argue breach, or present any evidence of breach, and they did not request a breach question in the charge as to Trinh. Likewise, Appellees did not plead failure of conditions precedent, present any evidence of that, or request an instruction or definition on that issue. Indeed, the undisputed evidence was that Trinh was not supposed to pay the final $20,000 until after the parties reduced their agreement to writing.[14]

A judgment must conform to the pleadings, unless the issue is tried by express or implied consent, in which case, they will be treated as if they had been pled.[15] But, trial by consent is intended to cover only the exceptional case in which it clearly appears from the entire record that the parties tried the unpleaded issue; it is not meant to establish a general rule of practice and should be applied with care.[16] In determining whether the issue was tried by consent, courts scrutinize the record for evidence of trial of the issue.[17] Here, the issue of Trinh's failure to perform his obligations under the contract was not tried by consent.

---

[14]    R.R., Vol. 3, 28:6–12, 47:23 – 48:2.

[15]    *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[16]    *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

[17]    *Flowers*, 407 S.W.3d at 459.

Instead, Appellees made it abundantly clear that their *sole* argument was that the parties never formed an agreement, which was clearly stated by Appellees' counsel in his opening statement:

> My opposing counsel has just completed his opening statement, and his focus almost entirely was on damages. I'm here to represent to you, the jury panel in this case, that this case is not about damages. This case is about -- and *it's only about whether or not these parties entered into an enforceable agreement* to operate a pharmacy called Med Solutions Pharmacy. We say absolutely not.[18]

Appellees reiterated this point in their closing argument, asking the jury to "answer the Question 1 'No.' There is no -- Mr. Trinh was not a partner with either Fatha Elmi or with the pharmacy."[19]

Only if both parties allege the other party breached may a court ask the breach-of-contract question disjunctively, together with an appropriate instruction directing the jury to decide which party materially breached first.[20] Thus, if Appellees alleged Trinh's failure to pay $20,000 constituted a breach, then the jury would have been asked to decide which party materially breached the contract first.

---

[18] R.R., Vol. 2, 133:14–21 (emphasis added).

[19] R.R., Vol. 4, 58:21-23. It is unsurprising the jury rejected Appellees' sole defense, inasmuch as the jury heard audio recording of an in-person conversation with Trinh and Elmi. In it, Elmi admitted that she and Trinh formed a partnership, but she claimed she no longer wanted him in the business. While that may be a partner's right in an at-will partnership, the ousted partner is entitled to his share of the business's worth, plus his share of the business's distributions until such time as his interest is repurchased.

[20] Texas Pattern Jury Charges, Business Consumer Insurance Employment, comment to PJC 101.2 (2012); *Mustang Pipeline*, 134 S.W.3d at 200.

Similarly, if, by arguing that the agreement was never "consummated," Appellees mean that the $20,000 was a condition precedent to their performance of the contract, Appellees were required to plead and present evidence in support of that issue. But, Appellees never pleaded failure of conditions precedent, they presented no evidence in support of that, and they did not ask for an instruction to be included with the charge.[21]

In short, Appellees never pleaded breach or failure of a condition precedent, and they presented no evidence in support of either. Thus, the verdict cannot be "harmonized" by finding Trinh failed to perform his obligations, and the Court should grant this motion and reverse and render judgment awarding Trinh damages and attorney's fees for his breach of contract claim.

## B. The Memorandum Opinion Did Not Address Those Cases Holding that a Jury May Not Award No Damages When Expert Testimony on Damages is Uncontroverted.

Texas law is clear that a jury cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted, but was not controverted.[22] When a precise

---

[21] Texas Pattern Jury Charges, Business Consumer Insurance Employment, PJC 101.6 (2012).

[22] *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). This Court reversed on the issue of Trinh's attorney's fees. While that issue was remanded for consideration of "the amount involved and the results obtained," the same basic rationale that required the jury to find *some* amount of fees (where the testimony was uncontroverted) also applies to the uncontroverted evidence of damages under a *Keller* analysis.

method for assessing damages is presented, the jury may not arbitrarily assess an amount that is more or less than that which is supported by the evidence.[23] Thus, a jury may not "pull figures out of a hat;" rather, it must have a rational basis for its calculation.[24] So, while a jury has discretion to affix the precise amount of damages, its award must be within the range of values put into evidence. In short, it cannot "leap outside that evidence;" if it does, its verdict must be overturned.[25]

This well-settled rule has been applied in different contexts. For example, in personal injury cases, if a jury found liability and was presented with uncontroverted evidence of the plaintiff's medical bills, an award less than that amount must be reversed.[26] This Court has applied this rule to appraisals and attorney's fees.[27]

---

[23] *First State Bank v. Keilman*, 851 S.W.2d 914 (Tex. App.—Austin 1993, writ denied); *National Plan Admins., Inc. v. Nat'l Health Ins. Co.,* 150 S.W.3d 718, 740 (Tex. App.—Austin 2004), *rev'd on other grounds*, 235 S.W.3d 695 (Tex. 2007).

[24] *Keilman*, 851 S.W.2d at 930.

[25] *Callejo v. Brazos Elec. Power Coop.*, 755 S.W.2d 73, 75–76 (Tex. 1988); *cf. Moore v. Moore*, 383 S.W.3d 190, 197–98 (Tex. App.—Dallas 2012, pet. denied) (affirming judgment where fact finder placed value in-between business valuation ranges offered by experts).

[26] *See Davis v. Davison*, 905 S.W.2d 789, 791 (Tex. App.—Beaumont 1995, no writ) (reversing award of zero damages because plaintiff's uncontroverted evidence of medical bills established objective evidence); *Hill v. Clayton*, 827 S.W.2d 570, 574 (Tex. App.—Corpus Christi 1992, no writ) (reversing award of one-third amount of uncontroverted medical expenses); *cf. Russell v. Hankerson*, 771 S.W.2d 650, 653 (Tex. App.—Corpus Christi 1989, writ denied) (reversing award of zero damages of uncontroverted medical expenses because finding was against great weight and preponderance of the evidence); *McGee v. Thomas*, 508 S.W.2d 191, 191–92 (Tex. Civ. App.—Amarillo 1974, writ ref'd n.r.e.) (same).

[27] *HCAD v. Sigmore Corp.*, 2008 WL 921073, at *1 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (reversing where jury placed value of furniture, fixtures and equipment below range of

This is so because "the jury cannot ignore the undisputed facts and arbitrarily fix an amount that is neither authorized nor supported by the evidence."[28] While this rule has some limits, those limits do not apply when the evidence could have been readily controverted but was not. So, for example, if a plaintiff offered undisputed testimony of his mental anguish, a jury need not award that amount, because that kind of evidence is subjective and cannot be readily controverted.[29]

Furthermore, uncontroverted expert testimony is binding where the subject matter is one for experts alone.[30] Expert testimony was required here because the subject-matter of the damages in this case was beyond the jury's experience and knowledge,[31] because the evidence consists of thousands of transactions requiring professional judgments as to each using GAAP and professional standards.

Appellees could have controverted Appellant's damages methodologies or calculations by, *e.g.*, retaining an expert to contradict Appellant's expert, or

---

values testified to by parties' respective experts); *Wang v. Gonzalez*, 2013 WL 174576 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (attorney's fees).

[28] *Hill*, 827 S.W.2d at 574.

[29] *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 442 (Tex. 1995).

[30] *HCAD v. Riverway Holdings, L.P.*, 2011 WL 529466, *4 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 206 (Tex. App.—Waco 2009, no pet.) (quoting extensively from *City of Keller*, 168 S.W.3d at 819–20).

[31] *Morton v. Johnston*, 1998 WL 713679, *5 (Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.).

presenting evidence or testimony that the Pharmacy was not profitable at all or at least not as profitable as Appellant claimed. Appellees chose not to.

Instead, Elmi admitted she regularly took distributions from the Pharmacy after ousting Trinh,[32] a fact Trinh's expert confirmed.[33] Moreover, the jury saw evidence Elmi's current partner in the Pharmacy, Ken Taylor ("Taylor"), to whom she sold a 10% interest, receives "10% of whatever—after we pay everybody."[34] This sale occurred January 31, 2011,[35] shortly after Appellees breached their agreement with Trinh.[36] Taylor paid $15,000 for his 10% of the Pharmacy, and Elmi admitted that this was a better deal than the one she had with Trinh.[37]

Taylor confirmed these facts.[38] This is at least *some* evidence that Trinh made a good investment, also known as his damages. Appellees do not dispute either the fact that the Pharmacy was profitable or the fact that it had value, and they did not

---

[32]  R.R., Vol. 3, 100:20–22, 101:8–24, 102:3 – 103:10, 103:14 – 104:6, 104:12–24, 105:16 – 106:1, and 106:9-21.

[33]  R.R., Vol. 3, 170:22 – 172:23, 192:9–19.

[34]  R.R., Vol. 7, pt. 2, 84 (Elmi Dep., April 13, 2012, 268:24 – 269:19).

[35]  R.R. Vol. 7, pt. 2, 338 (Taylor Dep., Oct. 11, 2013, 9:20-23).

[36]  R.R., Vol. 7, pt. 2, 86 (Elmi Dep., April 13, 2012, 276:23 – 277:2).

[37]  R.R., Vol. 7, pt. 2, 86 (Elmi Dep., April 13, 2012, 276:18–22). Trinh's agreement was that he would pay $30,000 for a 40% interest; thus, just on this evidence, Trinh's share of the Pharmacy was worth twice what he paid for it, *i.e.*, damages of $30,000.

[38]  R.R. Vol. 7, pt. 2, 338 (Taylor Dep., Oct. 11, 2013, 74:8–12).

dispute Trinh's evidence of its profitability or its value. Accordingly, the jury was not free to disregard this evidence and award nothing for damages.

Nor can it be said that the jury could have found Trinh had no damages because he received distributions from the Pharmacy or because his interest in it was reacquired, because there is no evidence to support either. Indeed, it was also undisputed that, after his receipt of the October 2010 distribution, Trinh received no more distributions and Appellees refused to buy-out Trinh's 40% interest in the Pharmacy.[39] By finding Appellees breached the partnership agreement but awarding zero damages for that breach, the jury impermissibly disregarded uncontroverted expert testimony (which could have been readily controverted). But, the jury also disregarded Elmi's testimony that the Pharmacy was profitable, that she sold a 10% interest in it to Taylor for proportionately more than she received from Trinh (shortly after Appellees' breach), that Trinh received no distributions after October, and that his shares were never repurchased by Appellees.

Also, this Court did not address those cases which require an award of damages when expert testimony is required and uncontroverted, as was true here.[40]

---

[39] R.R., Vol. 3, 33:18 – 34:3.

[40] Appellees did not cross-examine Trinh's damages expert on his methodologies, data analysis, professional judgments, or bottom-line conclusions; and they did not cross-examine Trinh's attorney's fees expert at all.

Rather, it cited two cases for the proposition that a jury's finding of liability does not necessitate an award of damages.[41]

These cases are inapposite. Moreover, they do not overturn or contradict the law that juries cannot "leap outside the evidence" in awarding, or not awarding damages, when that evidence was readily controvertible but was not controverted. They are also distinguishable from the present case.

In *Cooper v. Lyon Financial Services, Inc.*,[42] a cosmetic surgeon brought a DTPA claim against a creditor that leased a laser to him. The surgeon sought damages for the full amount of the lease, or alternatively, the nonrefundable deposit he paid.[43] At trial, the surgeon did not specify any amounts he paid in relation to leasing the laser, only as to the laser's personal value.[44] Evidence was presented that the purchase price of the laser exceeded the lease price.[45] The jury found that the creditor violated the DTPA but awarded no damages.[46] On appeal, the court held "there was more than a scintilla of evidence to support the jury's implicit finding the

---

[41]  Mem. Op. at 8.

[42]  *Cooper v. Lyon Financial Services, Inc.*, 65 S.W.3d 197 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

[43]  *Id*. at 204.

[44]  *Id*. at 202, 204.

[45]  *Id*. at 204.

[46]  *Id*. at 202.

value of the laser [the surgeon] received equaled or exceed[ed] the purchase price" and that the surgeon's damages were zero.[47]

The other case cited is *American Recreational Markets General Agency, Inc. v. Hawkins*.[48] The problem with *Hawkins* is it does not address the state of the evidence on damages, if that evidence was controverted, what it was based on, or whether it required expert testimony to support it.

Here, Appellees did not cross-examine Trinh's damages expert's bottom-line conclusions or his professional judgments on the transactions he analyzed, and they did not present an alternative calculation or amount contradicting Trinh's model.[49] Moreover, Elmi admitted she received distributions that Trinh did not and she sold a share of Trinh's 40% interest in the Pharmacy to another party just months after ousting Trinh. Where, in *Cooper*, there was some evidence to support a finding of zero damages, the same cannot be said in this case. The jury was not free to disregard Liner's testimony, and it could have only awarded an amount within the

---

[47]   *Id*. at 204.

[48]   *American Recreational Markets General Agency, Inc. v. Hawkins,* 846 S.W.2d 476 (Tex. App.—Houston [14th Dist.] 1993, no writ).

[49]   If Appellees presented evidence that the value of the Pharmacy was only $50,000 and Elmi received no "net distributions," then they would have conceded that Trinh would have been entitled to $20,000 in damages, *i.e.*, 40% of $50,000, based on the jury's finding that Appellees breached the agreement. Had the jury awarded zero damages on that record, this Court would have been required to render judgment awarding Trinh at least $20,000. It is unfathomable that Appellees could achieve a better result by failing to controvert Trinh's expert testimony on damages.

range testified to. A finding of zero damages is *at least* against the great weight and preponderance of the evidence and a new trial should be ordered on damages and attorney's fees if this Court does not render judgment in favor of Trinh.

## IV.    CONCLUSION & PRAYER

The jury's verdict cannot properly be harmonized by finding Trinh failed to perform his obligations under the contract or that his failure to pay any additional amounts to Appellees was a failure of a condition precedent, because those issues were not pleaded and no evidence was presented to the jury that Trinh had to do anything before Appellees breached the contract.

Juries are supposed to resolve *contested* issues. Where uncontroverted expert testimony is required to prove damages, or where objective testimony as to damages could have been controverted but was not, a jury is not free to disregard that testimony. In this case, that means the jury should have awarded damages within the range established by the evidence. Because Appellees did not contest damages, the jury was required to award Trinh damages of at least $554,168, and based on that award, to award Trinh attorney's fees of at least $227,084.

Trinh therefore asks this Court to grant his Motion for Reconsideration, reverse the judgment, and render judgment for Trinh of $554,168 in damages and

$227,084 in fees.[50] Alternatively, Trinh asks this Court to grant his Motion for Reconsideration and remand for a new trial on damages and attorney's fees because the judgment is against the great weight and preponderance of the credible evidence.

Respectfully submitted,

SIMON HERBERT & MCCLELLAND, LLP

By: */s/ Paul Simon*

Paul Simon
State Bar No. 24003276
Rachel Berkley
State Bar No. 24082684
3411 Richmond Ave., Suite 400
Houston, Texas 77098
Telephone: (713) 987-7100
Telecopy: (713) 987-7120

**ATTORNEYS FOR APPELLANT**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2015, a copy of the foregoing was delivered in a manner prescribed by the Texas Rules of Civil Procedure to:

***Via Facsimile: (713) 783-0787***
Scott Bui
Bui & Nhan, PLLC
3921 Ocee
Houston, Texas 77063

*/s/ Paul Simon*
Paul Simon

---

[50] These are the low-end of Trinh's expert-supported damages model. If this Court grants this Motion, it should also reverse and render, or alternatively reverse and remand for new trial, the issue of Trinh's attorney's fees based on his breach-of-contract claim.